IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Broadcast Music, Inc., et al., | Case No. 3:13 CV 1007 |
| Plaintiffs, | AMENDED MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Steve Reisner, d/b/a The Nest, et al., | |
| Defendants. | |

### INTRODUCTION

This is a copyright infringement case. Pending before this Court is Plaintiffs' Motion for Default Judgment (Doc. 8). For the following reasons, Plaintiffs' Motion is granted, judgment in the amount of $30,300 is entered against Defendants, and Defendants are permanently enjoined from further acts of infringement.

### BACKGROUND

Plaintiffs allege Defendants, who own and operate an establishment known as The Nest a/k/a The New Nest in Fostoria, Ohio, willfully infringed their copyrighted music by playing it without a license (Doc. 1 at ¶ 21). On August 11, 2011, Plaintiffs sent their first letter to Defendants, providing them with information on obtaining licensing to legally play Plaintiffs' musical compositions in Defendants' establishment (Doc. 8-5 at 2). Numerous other letters and phone calls followed (Doc. 8-3 at ¶¶ 5, 6 & 8). On August 18, 2012, and January 5, 2013, Plaintiffs' employee visited Defendants' establishment to investigate the possibility of infringement (Doc. 8-4 at 2, 8). During those visits, Plaintiffs' employee made recordings of music performed, both live and recorded (*id.* at 2–13). An analysis of the recording from the January 5 visit identified nine musical compositions

protected by Plaintiffs' copyrights. At the time of the recording, Defendants did not have a license to perform the recorded compositions. They have not obtained a license to date.

Plaintiffs filed this lawsuit on May 3, 2013 (Doc. 1), and filed returns of service as to all Defendants on May 7, 2013 (Doc. 5). Defendants failed to appear or file a responsive pleading. On August 12, 2013, the Clerk entered default judgment against Defendants (Doc. 7). Plaintiffs now ask this Court to enter judgment against Defendants in the amount of $43,800 for publicly playing musical compositions without a license (Doc. 8 at 1). Plaintiffs also ask this Court to enjoin Defendants from further infringing the copyrighted musical compositions licensed by Plaintiffs and for Defendants to pay interest on the awarded judgment (*id.*).

## STANDARD

In order for this Court to enter judgment under Federal Civil Rule 55, this Court must determine the amount of damages. Rule 55 does not require an evidentiary hearing as a prerequisite to the entry of judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained by computation on the record before the court. *Summa Western Reserve Hosp. v. AssureCare*, 2012 WL 1361608, at *1 (N.D. Ohio 2012). Plaintiffs seek statutory damages under 17 U.S.C. § 504(c), which permits a plaintiff to recover between $750 and $30,000 per infringement, rather than seek actual damages and profits.

When determining an appropriate award of statutory damages, courts may consider "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *Broadcast Music, Inc. v. Leyland Co.*, 2012 WL 5879838, at *8 (N.D. Ohio 2012) (citing *Cross Keys Pub. Co. v. Wee, Inc.*, 921 F. Supp. 479, 481

(W.D. Mich. 1995)). Courts also consider a desired deterrence effect because "[t]he statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

### ANALYSIS

Plaintiffs request statutory damages and attorneys' fees and costs (Doc. 8-1 at 5) as follows:

| | |
|---|---|
| 17 U.S.C. § 504(c) | $40,500 |
| Attorney's Fees | $ 2,900 |
| Costs | $    400 |
| **Total** | **$43,800** |

In support of their Motion, Plaintiffs attach: (1) declaration of Plaintiff Broadcast Music's Assistant Vice President, Legal (Doc. 8-2); (2) declaration of Plaintiff Broadcast Music's Assistant Vice President, Licensing (Doc. 8-3); (3) "certified infringement reports" of an auditor's visits to Defendants' establishment, "performance identification" declaration of Plaintiff Broadcast Music's performance identification employee, and declaration of Plaintiff Broadcast Music's employee authorized to review both the "certified infringement report" from January 5, 2013, and the recording made by the auditor during that visit (Doc. 8-4); (4) the written correspondence Plaintiffs sent to Defendants; and (5) declaration setting forth attorneys' fees and costs (Doc. 8-5).

Plaintiffs seek an award of $4,500 for each of the nine claims of infringement (Doc. 8-1 at 3). Plaintiffs provide evidence that Defendants saved $19,900 by failing to obtain a license to play the music selections at issue for the period between August 2011 and July 2013 (Doc. 8-3 at ¶ 18). According to Plaintiffs, a license costs about $10,000 per year (*id.*). Before filing their Complaint, Plaintiffs sent 35 letters and made 52 phone calls to Defendants attempting to get Defendants to either

buy a license or stop playing the copyrighted music (Doc. 8-5; Doc. 8-3 at ¶ 8). Plaintiff Broadcast Music even sent a licensing employee to Defendants' establishment to speak with them regarding licensing (Doc. 8-3 at ¶ 8; Doc. 8-5 at 5). Defendants' continuous disregard of these communications establishes the willfulness of their violation of the Copyright Act. To deter Defendants from future infringement, and recognizing the extra efforts made by Plaintiffs to bring Defendants into compliance, this Court awards Plaintiffs a total of $27,000 in statutory damages ($3,000 per infringement), an amount appropriately in excess of what Defendants would have paid in annual licensing fees during the year the recordings were made (Doc. 8-3 at ¶¶ 10–12, 18).

Plaintiffs also seek an injunction barring Defendants from future infringement of Plaintiffs' copyrighted musical works under 17 U.S.C. § 502(a), which grants this Court the power to enjoin parties "to prevent or restrain infringement of a copyright." Courts typically grant permanent injunctions when defendants fail to obtain a license to perform copyrighted music even after being put on notice of the need for a license "because of the strong probability that unlawful performances of other copyrighted material will occur." *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 569 (E.D. Mich. 1994). Here, Defendants ignored 35 written correspondences, 52 phone calls, and a personal visit from Plaintiff Broadcast Music, all urging Defendant to obtain a license. From the time of their initial letter, Plaintiffs gave Defendants well over a year to obtain a license before filing suit in this Court. Despite these efforts, Defendants remain unlicensed. Therefore, injunctive relief is appropriate.

Plaintiffs also seek an award of attorneys' fees and costs under 17 U.S.C. § 505, which gives this Court discretion to award reasonable attorneys' fees and costs to the prevailing party. Plaintiffs request $2,900 in fees and $400 in costs, and both are reasonable. Therefore, this Court awards $3,300 in attorneys' fees and costs.

## CONCLUSION

For the reasons stated above, this Court grants Plaintiffs' Motion for Default Judgment (Doc. 8). Defendants are permanently enjoined from further acts of infringement of the copyrighted musical compositions licensed by Plaintiffs, and judgment is entered in the amount of $30,300, plus interest from this date.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 1, 2014